## VERIFICATION AFFIDAVIT IN SUPPORT
## OF FORFEITURE COMPLAINT

I, Brian Finney, after being duly sworn, depose and state as follows:

## AFFIANT'S BACKGROUND

1. I have been a Special Agent with the Drug Enforcement Administration, United States Department of Justice, since 1998. I have used a variety of methods to investigate narcotic organizations, including, but not limited to, electronic surveillance, visual surveillance, general questioning of witnesses, the use of search warrants, the use of confidential informants, the use of pen registers, Title-III wire and electronic intercepts and the use of undercover agents, all in support of enforcing the drug laws of the United States.

2. I make this affidavit for and on behalf of the United States of America. The information contained in this affidavit is both from my own personal knowledge and derived from other law enforcement officers, employees, and agents. The factual matters stated in this affidavit and in the related Complaint for Forfeiture are true and correct to the best of my knowledge, information, and belief.

## PROPERTY FOR FORFEITURE

3. This affidavit is made to support the complaint for forfeiture of the following property:

   a. $4,115.00 U.S. Currency; and

   b. a 2007 Infiniti G35, VIN JNKCV54E87M903273.

## LEGAL AUTHORITY FOR FORFEITURE

4. Based on my training and experience, I know that 21 U.S.C. § 881(a)(6) provides for

Affidavit in Support of Forfeiture Complaint – Page 1



forfeiture of property that: (1) was furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Chapter 13, Subchapter I of Title 21, United States Code; (2) is proceeds traceable to such an exchange; and/or (3) was used or intended to be used to facilitate a violation of Chapter 13, Subchapter I of Title 21, United States Code. I also know that 21 U.S.C. § 881(a)(4) provides for forfeiture of all conveyances, including vehicles, that are used or are intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or listed chemical in violation of Chapter 13, Subchapter I of Title 21, United States Code.

## FACTS SUPPORTING FORFEITURE

5. I have been involved in the DEA's criminal investigation concerning Shanda Hawkins since early June 2014. During the investigation, DEA investigators interviewed several people associated with Shanda Hawkins, including Edwin Romine, who described that at various times between 2014 and Hawkins' arrest in March of 2015, Hawkins conspired with him and others to distribute multi-ounce, pound, and kilogram quantities of methamphetamine to multiple customers.

6. During the investigation, law enforcement personnel also learned that beginning in 2014 and continuing until her arrest, Hawkins and others supplied Leslie Moskowitz with multi-ounce quantities of methamphetamine.

7. On June 15, 2015, agents and officers with the DEA Fort Worth Resident Office and the Fort Worth Police Department executed a federal arrest warrant on Moskowitz, at his residence, located at 7320 Pensacola Ave., Fort Worth, Texas. After they arrested Moskowitz, the agents

Affidavit in Support of Forfeiture Complaint – Page 2

and officers were granted written consent to search Moskowitz's residence. During the search of the master bedroom, they seized a plastic baggie containing methamphetamine, a digital scale, and a small plastic baggie containing marijuana. They also seized a large quantity of U.S. currency sitting on a table in the master bedroom and another large quantity of U.S. currency inside a locked safe in that room. These quantities totaled $4,115.

8. On July 9, 2015, Task Force Officer Cy Crum, Task Force Officer Perry Moore, and I interviewed Leslie Moskowitz, in the presence of his defense attorney, Anthony Green, at the Drug Enforcement Administration Fort Worth Resident Office regarding his knowledge of methamphetamine trafficking. During that interview, Moskowitz stated that the most methamphetamine he had ever had in his possession at one time was between two and two-and-a-half ounces of methamphetamine. Moskowitz stated that on one occasion, Hawkins and Gavin Seguin gave him three ounces, but they later took some of the methamphetamine back.

9. Moskowitz further stated that Hawkins and Seguin initially gave him the three ounces of methamphetamine to cover a check for $2,500.00 that Moskowitz had been asked to cash for his old roommate, Donna Brooks. Moskowitz stated that Brooks had given him the check to cash and help bond Romine out of jail. Moskowitz stated that he met Hawkins and another unknown female at the bank, but that his bank would not cash the check because it was a third party check. Moskowitz also stated that while he was locked up at the Parker County Jail after his arrest, he met Romine for the first time. Moskowitz then detailed that he had multiple methamphetamine customers, to which he would supply between user amounts and one-ounce quantities of methamphetamine.

Affidavit in Support of Forfeiture Complaint – Page 3

10.     Moskowitz also stated that he would allow Hawkins and Seguin to meet their customers and conduct drug transactions at his residence and that they would occasionally use his scales to weigh methamphetamine. He allowed them to use his residence to conduct the drug sales because he hoped they would give him a better price on the methamphetamine he was buying from them.

11.     Moskowitz also stated that on one occasion, he and Hawkins traveled to a motel in Arlington, Texas, where they met with an unknown man, at which time Moskowitz purchased three-quarters of an ounce of methamphetamine from the man. Moskowitz also stated that they drove in his vehicle, the 2007 Infiniti G35 that is the subject to his forfeiture action, to purchase the drugs.

12.     On July 22, 2015, Moskowitz signed his factual resume in Case No. 4:15-CR-151-O admitting that, since approximately February of 2015 until his arrest, he received ounce and multi-ounce quantities of methamphetamine on consignment from Seguin and Hawkins. He then sold the methamphetamine to various customers in the Fort Worth area, and Seguin and Hawkins gave him additional methamphetamine when needed. In this manner, Moskowitz, Seguin, and Hawkins conspired with each other and others to possess with intent to distribute more than 50 grams of methamphetamine.

13.     On July 10, 2015, Romine signed his factual resume Case No. 4:15-CR-151-O admitting that, from July 2012 until he was incarcerated in state prison in August 22, 2014, he obtained and distributed methamphetamine in the Wichita Falls area.

14. Although Romine claims an ownership interest in the $4,115.00 seized from Moskowitz's residence on June 15, 2015, he had been incarcerated in state prison since August 22, 2014, and had never met Moskowitz until after Moskowitz's arrest on June 15, 2015.

## CONCLUSION

15. Based on my training, experience, and the information set out in the preceding paragraphs, I believe that these facts establish that the $4,115.00 in U.S. currency: (1) was furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Chapter 13, Subchapter I of Title 21, United States Code; (2) is proceeds traceable to such an exchange; and/or (3) was used or intended to be used to facilitate a violation of Chapter 13, Subchapter I of Title 21, United States Code. I also believe that the 2007 Infiniti G35 was used to transport and to facilitate the transportation, sale, receipt, possession, and/or concealment of methamphetamine.

_____
Brian Finney
Special Agent, DEA

Subscribed to and sworn before me on this 15th day of October, 2015.

_____
Notary Public


COLLEEN MARIE PLOWMAN
My Commission Expires
August 30, 2018